## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| Richard and Maureen Cowles | : | |
| Individually & as H/W | : | |
| 129 West Main Street | : | |
| Penns Grove, NJ 08069 | : | |
| Plaintiffs, | : | |
| v. | : | CIVIL ACTION NO.: 09-cv-4880 |
| | : | |
| Jonathan Wyman d/b/a Equity | : | JURY OF TWELVE (12) JURORS DEMANDED |
| Holdings Group, LLC | : | |
| 75 Kovar Street | : | |
| Bogota, NJ 07603 | : | |
| | : | |
| Lead Marketing Corporation d/b/a | : | |
| Your Credit Specialists | : | |
| c/o Frank Rizzuto | : | |
| 10 Mulberry Circle | : | |
| Staten Island, NY 10301 | : | |
| | : | |
| Paul L. Pape | : | |
| 17 Putters Court | : | |
| Staten Island, NY 10301 | : | |
| | : | |
| Joseph DiCostanzo | : | |
| 184 Bionia Ave. | : | |
| Staten Island, NY 10305-4410 | : | |
| | : | |
| Frank Rizzuto | : | |
| 10 Mulberry Circle | : | |
| Staten Island, NY 10301 | : | |
| | : | |
| | : | |
| Aurora Loan Services, LLC | : | |
| 10350 Park Meadows Drive | : | |
| Littleton, CO 80124 | : | |
| | : | |
| E-Title Solutions, LLC f/k/a | : | |
| E-Land Title Solutions, LLC | : | |
| Locust Grove Design Center | : | |
| 466 Church Street | : | |
| Hamilton, NJ 08620 | : | |
| | : | |
| John Does 1-10 | : | |
| Defendants. | : | |

## FIRST AMENDED CIVIL ACTION COMPLAINT

### I.      Preliminary Statement

1.      This is an action for an award of attorney's fees and costs, compensatory, statutory, treble and punitive damages, also seeking equitable, injunctive and other relief, for Defendants' "Foreclosure Rescue Scam," unfair or deceptive acts and practices ("UDAP"), conspiracy and/or aiding and abetting same.

2.      Individually, jointly and/or severally, Defendants are liable to Plaintiffs for, but not limited to, the below causes of action and aforesaid remedies, for the reasons stated, which reasons are currently known, upon information and/or belief, and/or will be proven in discovery and/or at trial.

3.      At all times material, Plaintiff here reserves the right to rely on the "Discovery Rule" and/or the Doctrine(s) of Equitable Tolling/Fraudulent Concealment, respectively.

### II.     Jurisdiction and Venue

4.      Jurisdiction in this Honorable Court is based on federal question conferred by 28 U.S.C. §1331; Supplemental jurisdiction over state law claims is granted by 28 U.S.C §1367.

5.      Venue lies in this District in that the events giving rise to this claim occurred here, at least one (1) Defendant resides, maintains a principle place of business, and/or does business here, and/or the subject of this action is situated within this district.

### III.    Parties

6.      Plaintiffs, Richard and Maureen Cowles ("Plaintiffs" and/or "Cowles"), are adult individuals and husband and wife, at all times material was residing at the above-captioned address ("Premises").

7.      Defendant, Jonathan Wyman is an adult individual, believed to be a citizen and at all times residing at above captioned address.

8.      Defendant, Lead Marketing Corporation (hereinafter "YCS") is a duly incorporated corporation under and by virtue of the laws of the State of Florida and is the owner of a fictitious name "Your Credit Specialists Corporation" registered with the State of New Jersey.  At the times of the events herein, YCS maintained a principle place of business in Woodbridge NJ which is no longer active and at all times material acted superficially as Plaintiffs' Credit Repair Organization.

9.      Upon information and belief, Lead Marketing sold the Plaintiffs' contact information as a foreclosed consumer lead to Sean Fitzherbert, a foreclosure rescue con artist described hereinafter.

10.     Defendant, Frank Rizzuto is an adult individual, believed to be a citizen and at all times relevant herein residing at above captioned address.

11.     Defendant, Paul L. Pape is an adult individual, believed to be a citizen and at all times residing at above captioned address.

12.     Defendant, Joseph DiCostanzo is an adult individual, believed to be a citizen and at all times residing at above captioned address.

13.     At all times herein, Rizzuto, Pape, and DiCostanzo were corporate officers of Lead Marketing.

14.     Upon information and belief, YCS is nothing more than an alter ego of defendants Pape, Rizzuto, and DiConstanzo over which they exercise complete dominion and control partially as a fraud vehicle for them and their accomplices like Fitzherbert to drain equity

from desperate consumers' homes under the pretext of providing credit repair that is never delivered.

15.     Sean Fitzherbert ("Fitzherbert"), is an adult individual, believed to be a citizen and at all times residing at above captioned address without assets to satisfy any monetary judgment against him. At all times herein, Fitzherbert operated two (2) companies at issue in this litigation now defunct:

        a.  Equity Holdings Group, LLC ("Equity"), a duly incorporated limited liability company under and by virtue of the laws of the State of New Jersey, which maintained a principle place of business c/o Fitzherbert.

        b.  Crown Management Group Limited, LLC ("Crown"), is a duly incorporated limited liability company under and by virtue of the laws of the State of New Jersey, which maintained a principle place of business c/o Fitzherbert.

16.     Defendant, Aurora Loan Services, LLC ("Aurora"), is a duly incorporated corporation under and by virtue of the laws of the State of Colorado, maintaining a principle place of business at the above captioned address, at all times material acting as Defendant Wyman's foreclosing lender as a matter of fact and/or Plaintiffs' foreclosing Lender as a matter of law. The originator and assignor of Wyman's loan, former defendant First Magnus Financial Corporation, has been liquidated in bankruptcy prior to the filing of this proceeding.

17.     Defendant E-Title Solutions LLC was formerly known as e-LAND Title Solutions, LLC, and does business as a title and closing agent for mortgage lenders.

18.     At all times material, Defendants were acting individually, within the course and scope of their authority and employment, and/or through their agents, servants, work-persons, and/or employees, respectively.

19.     At all times material, Defendants acted individually and/or on behalf of each other as agents, servants, work-persons, alter egos, and/or employees thereof.

20.     Defendants are liable to Plaintiffs, directly, indirectly, contractually, expressly, implicitly, as a matter of law and/or vicariously, including but not limited to liability via a third-party beneficiary relationship, and/or via conspiring and/or aiding and abetting.

## IV.     Background

21.     In or around 2006, Plaintiffs fell behind on their mortgage due to a period of unemployment.

22.     In or around November 2006, Plaintiffs received a notice to foreclose from Option One (non-party).

23.     Plaintiffs attempted to negotiate with Option One, which negotiations were ultimately unsuccessful.

24.     In or around December 2006, Option One filed a foreclosure action against Plaintiffs.

25.     In or around March 2007, a Sheriff's Sale is scheduled for Plaintiffs' premises for April 2007.

26.     In or around March 2007, Plaintiffs were contacted by telephone by Equity through its agent, Fitzherbert.

27.     Fitzherbert advised Plaintiffs that he would refinance Plaintiffs' loan in an attempt to save Plaintiffs' home, which home Plaintiffs had lived in for approximately twenty two (22) years.

28.     After the initial phone call, Fitzherbert came to Plaintiffs' home to advise Plaintiffs that the refinance was not possible and to discuss another possibility to save the Premises.

29.     Fitzherbert's offer to Plaintiffs was a "lease to buy-back" option wherein Plaintiffs had to sell their property to Wyman, an investor, whom Plaintiffs now believe Fitzherbert has a business relationship with (undisclosed).

30.     Plaintiffs were to rent the property for a year from Wyman.

31.     The rents for the year were to be escrowed at the closing.

28.     After one (1) year, Plaintiffs were to repurchase the premises for $205,000.00.

29.     During the year of renting, Plaintiffs were to repair their credit.

30.     Fitzherbert enrolled Plaintiffs with YCS for the credit repair.

31.     On or about April 3, 2007, Plaintiffs entered into a contract with YCS for credit repair.

32.     Under the agreement and pursuant to the closing, YCS received approximately $6,632.20 to negotiate and or pay off Plaintiffs' debts and otherwise provide credit repair services to plaintiffs.

33.     Despite payment, YCS did not payoff Plaintiffs' debts or otherwise repair Plaintiffs' credit.

34.     At closing on or about April 17, 2007, Wyman and Plaintiffs executed an agreement of sale, and a mortgage and note in favor of First Magnus (collectively "Loan") of which loan Plaintiffs were the borrowers implied as a matter of law.

35.   The Loan settlement sheet ("Hud-1") from the closing indicates Plaintiffs gave $5,850.00 as a "seller credit" at closing.

36.     Plaintiffs did not give the seller credit.

37.     From the proceeds at closing, the HUD-1 indicated that $24,000.00 was to be escrowed with Crown Management for Plaintiffs' 12 months of rent payments.

38.     Upon information and belief, the aforesaid sum was not escrowed and instead defendant E-Title wired $48,220.79 to Equity Holdings and wired no funds at all to Crown Management.

39.     Upon information and belief, Wyman, Fitzherbert, E-Title, and/or Crown Management had an agreement to distribute the funds to Equity Holdings contrary to the HUD-1 and to then re-distribute that money for their own purpose rather than Plaintiffs' rent.

40.     Plaintiffs did not receive any profits and/or proceeds from the Loan or closing.

41.     At all times material, Plaintiffs believed the agreement was to enable them keeping their long-time held family home.

42.     Equity received $25,000 for consultation services, which services were not supplied.

43.     Pursuant to the above agreement, Plaintiffs were to be placed into a mortgage to repurchase the premises in or around March 2008.

44.     Unbeknownst to Plaintiffs, at some point the loan was assigned and/or otherwise transferred to Aurora.

45.     In or around January 2008, Plaintiffs were contacted by Wyman and told that his partner had stolen escrow monies rather than paying the mortgage to Defendant, Aurora.

46.     In or around December 2008, Plaintiffs received notice that the Aurora Loan was in default as Wyman failed to pay the mortgage.

47.     At no time were the inter-relations between Equity, Crown, Fitzherbert, and Wyman explained to Plaintiffs.

48.     Had Plaintiffs known of the inter-relationships, they would not have proceeded with the transaction.

49.     As a result of the foregoing, Plaintiff has suffered injuries including, but not limited to:  (1) pain and suffering, including emotional distress and embarrassment; (2) damage to credit rating and/or credit defamation; (3) financial loss(es), including lost opportunity(ies) and/or equity; (4) loss of and unlawful eviction from the premises; (5) attorneys fees and court costs; and/or (6) such other and further injuries as will be determined in discovery and/or at trial, including aggravation of a pre-existing condition(s).

## V.     Causes of Action

50.     Paragraphs above are incorporated by reference as if fully set forth at length herein and below.

51.     Plaintiff is a natural person provided with the right to defer payment of debts or to incur payment of debt and defer payment, and the credit offered or extended was primarily for personal, family and/or household purposes.

52.     As a matter of law, Plaintiff and Defendants are "persons."

**COUNT I - Credit Repair Organizations Act ("CROA")**
*(Plaintiffs v. YCS)*

53.     Plaintiffs repeat and re-allege all paragraphs above as if fully set forth herein.

54.     At all times material, Plaintiff was a "consumer" as defined by 15 U.S.C & §1679(a)(1).

55.     At all times material, YCS constituted a "credit repair organization" as defined by 15 U.S.C §1679(a)(3) in that it accepted the sum described herein to use the mails, phone, and or other instrumentalities of interstate commerce to provide or perform credit repair for plaintiffs to qualify them for a buyback loan respecting their property.

56.     The promise of credit repair by YCS was mere artifice arranged between Fitzherbert and YCS to cloak their true intention to take plaintiff's property in the guise of credit repair and foreclosure rescue.

57.     For the reasons before said at all times material Defendant was in violation of 15 U.S.C §1679, et seq. including but not limited to violating the "Prohibited Practices" section of the Act as follows:

(a) "make or use any untrue or misleading representation of the services of the credit repair organization; or…"

(b) "engage, directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

**COUNT II**
**VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT**
N.J.S.A. 56:8-2 *et seq. (All defendants excluding Aurora)*

58.     Plaintiffs repeat and re-allege all paragraphs above as if fully set forth herein.

59.    Using material misrepresentation, affirmatively or by omission, Defendants induced plaintiffs to enter into an illegal and financially devastating transaction.

60.    Defendants made the aforesaid misrepresentations to plaintiffs:

      a.  E-Title and Wyman misrepresented that $24,000 was set aside in escrow with Crown Management for 12 months rent payments;

      b.  E-Title joined with Fitzherbert and misrepresented on the HUD1 the over $22,000 paid to Equity Holdings LLC was for services to help plaintiffs regain ownership of their property when it was known no such services were provided by Equity Holdings;

      c.  That Wyman was a real investor with the intent to own the property rather than in fact acting as a straw buyer to facilitate the scheme;

      d.  YCS, Pape, Rizzuto, and DiCostanzo misrepresented that plaintiffs were to receive credit repair in exchange for over $6,000 paid in the loan from plaintiffs' home equity;

      e.  All said defendants misrepresented that the entire transaction was intended to save plaintiffs' home when the intent was to steal the home's equity under the pretext of saving plaintiffs' home and otherwise offering them beneficial services to them.

61.    Defendants acted at all times relevant knowingly, with fraudulent intent, and knowingly obtained the fruits of the fraud as described aforesaid.

62.    The misrepresentations made by Defendants substantially contributed to plaintiff's decision through his representative to enter into the transaction and justifiably relied upon the misrepresentations.

63.     By their actions described above, Defendants engaged in unconscionable commercial practices, deception, fraud, false pretense, false promise and/or misrepresentations and alternatively, or in addition, Defendants engaged in acts of omission, including but not limited to knowing concealment, suppression and omissions of material facts in connection with the mortgage transactions.

64.     Defendants intended for plaintiff through his representative to rely on the aforementioned acts including the unconscionable commercial practices, deception, fraud, false pretense, false promise and misrepresentation, and plaintiff did thereby rely on the same.

65.     The foregoing acts by Defendants constitute violations of New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-2 at seq., as a result of which plaintiff suffered ascertainable loss.

**COUNT III - Equitable Relief**
*(Defendant Aurora)*

66.     Plaintiffs repeat and re-allege all paragraphs above as if fully set forth herein.

67.     Based on facts alleged herein, the intent of the parties in engaging in the sale/leaseback transaction underlying the loan was for plaintiffs to give a mortgage on the property in exchange for the services of defendants in securing an investor to buy the property and lease it back to plaintiff while fixing plaintiffs' credit to secure them a loan to buy back the property.

68.     The aforesaid intent of the parties created an equitable mortgage granted by plaintiffs in favor of Fitzherbert and his companies Equity Holdings, LLC and Crown Management, LLC, in the context of a foreclosure rescue transaction rather than a traditional sale of the property.

69.     The following facts from and surrounding the transaction create the aforesaid equitable mortgage:

(a) Plaintiffs' existing mortgage loan was delinquent and in foreclosure status;

(b) Funds were noted on the HUD to be held in escrow for future debt servicing;

(c) Plaintiffs would continue to occupy the property under a lease/purchase agreement between Plaintiffs and Wyman to take effect immediately proceeding the sale;

(d) There was no prior listing of the property or involvement of a real estate agent in the sale;

70.     Based on the above facts, Wyman was a straw purchaser whose role was to facilitate a foreclosure rescue transaction.

71.     First Magnus was on notice by its own HUD1 and other documents accompanying the transaction that it was funding a foreclosure rescue transaction rather than a simple sale of the property in that First Magnus knew at the time of closing that:

a.   Plaintiffs' existing mortgage loan was delinquent and in foreclosure status;

b.   Funds were noted on the HUD to be held in escrow for future debt servicing;

c.   Plaintiffs would continue to occupy the property under a lease/purchase agreement between Plaintiffs and Wyman to take effect immediately proceeding the sale;

d.   There was no prior listing of the property or involvement of a real estate agent in the sale;

72.     Aurora as assignee of the loan was on notice of the foregoing facts by the face of the loan documents.

73.     Due to the failure of the defendants to arrange a legitimate rescue loan or sale transaction rather than engaging in a fraud to steal the home's equity, then to the extent that any lien exists arising from this transaction, it is equitably a lien solely for the

amount of the mortgage and tax and other liens pre-existing the loan and is a refinancing

loan between Aurora and plaintiffs.

## COUNT IV
### Truth-in-Lending Act ("TILA")/Home Ownership and Equity Protection Act ("HOEPA")
### (Defendant Aurora)

74.     Plaintiffs repeat and re-allege all paragraphs above as if fully set forth herein.

75.     To the extent an equitable mortgage exists and then existed upon the property

based on the aforesaid facts, then plaintiffs as implied at law borrowers were entitled to

disclosure of the loan's terms as required by TILA.

76.     At all times material, First Magnus, in the ordinary course of business, extended

and/or arranged for the extension of consumer credit and/or offered to extend or arrange

for the extension of such credit.

77.     The Loan was a residential mortgage loan subject to Plaintiffs' right of rescission,

and/or statutory and/or actual damages described by 15 U.S.C. §1635 and 12 C.F.R.

§226.23.

78.     In said loan transaction, Plaintiffs did not receive the disclosures required by the

Truth-In-Lending Act ("TILA"), 15 U.S.C.  §1601, et. seq., and Regulation Z of the

Federal Reserve Board ("Regulation Z"), 12 C.F.R §226.1 et seq., including, but not

limited to, notice pursuant to the Home Ownership and Equity Protection Act of 1994, 15

U.S.C. §1639(a) ("HOEPA").

79.     First Magnus failed to deliver all "material" disclosures required by TILA and

Regulation Z, including but not limited to:

> (a) Failing to properly and accurately disclose the "amount financed,"  described
>      in and in violation of Regulation Z §226.18(b) and 15 U.S.C. §1638(a)(2)(A);

(b) Failing to clearly and accurately disclose the "finance charge," described in and in violation of Regulation Z §226.4 and 15 U.S.C. §1638(a)(3);

(c) Failing to clearly and accurately disclose the "annual percentage rate," described in and in violation of Regular Z §226.18(e) and 15 U.S.C. §1638(a)(4);

(d) Failing to comply with the special disclosure requirements of Regulation Z §226.32; and/or

(e) Failing to timely provide each Plaintiff with two (2) copies of a Notice of her Right to Rescind the Transaction and/or one (1) copy each of the form Disclosure pursuant to TILA and/or HOEPA.

78.     Due to the violations of TILA and Regulation Z, Plaintiffs have an ongoing right to rescind the transaction, and/or right to statutory and actual damages.

79.     If rescindable as a matter of law, Plaintiffs either have previously rescinded the loan greater than twenty days prior to the filing of this complaint and Defendants have taken no action to rescind the loan in contravention of their responsibilities under TILA, or, to the extent this Honorable Court may find that Plaintiffs have not already rescinded the loan, Plaintiffs do hereby exercise their right to rescind same and this Complaint shall hereby constitute Plaintiffs' Notice of Rescission pursuant to TILA, 15 U.S.C. §1601, et seq.

80.     The Loan was a high rate mortgage within the meaning of 15 U.S.C. §1602(aa)(1)(B), in that the total points and fees Defendants charged Plaintiffs, in addition to interest, exceeded eight percent of the total loan amount or in that the APR trigger pursuant to HOEPA was met with respect to this transaction.

81.     Because the transaction met the statutory definition of a high rate mortgage, it was subject to the additional disclosure requirements imposed by the TILA amendments contained in HOEPA, 15 U.S.C. §1639(a), et seq.

82.     Defendants' failure to provide Plaintiffs with an accurate and timely HOEPA disclosure(s), as required by law, constitutes a "material" disclosure violation(s), TILA, 15 U.S.C. §1602(u) (as amended), Regulation Z §226.23 (as amended).

83.     To the extent that First Magnus transferred its interest in the Loan to defendant Aurora, 15 U.S.C. § 1641(c) renders defendant Aurora liable for complying with rescission remedies available to plaintiffs.

## VI.     Prayer for Relief

**WHEREFORE**, Plaintiffs request this Honorable Court enter judgment in their favor and against Defendants, individually, jointly and/or severally, in an amount in excess of seventy-five thousand dollars ($75,000), plus such other and further relief as this Honorable Court deems necessary and just, and to Order the following relief:

a. Termination of any security interest in Plaintiff's property which may have been created under the loan;
b. Return of any money or property given by Plaintiff's to anyone, including Defendants, in connection with the transaction;
c. Statutory damages;
d. Forfeiture and return of loan proceeds;
e. Damages, including;
    i. Actual damages;
    ii. Treble damages;
    iii. Attorneys fees and expenses, and costs of suit; and
    iv. Punitive Damages.
    v.

WEISBERG LAW, P.C.

/s/ Matthew B. Weisberg, Esquire
MATTHEW B. WEISBERG, ESQUIRE
Attorney for Plaintiffs

Dated: Nov. 30, 2010

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

| | | |
|---|---|---|
| Richard and Maureen Cowles | : | |
| Individually & as H/W | : | |
| 129 West Main Street | : | |
| Penns Grove, NJ 08069 | : | |
| Plaintiffs, | : | |
| v. | : | CIVIL ACTION NO.: 09-cv-4880 |
| | : | |
| Jonathan Wyman d/b/a Equity | : | Jury Of Twelve (12) Jurors Demanded |
| Holdings Group, LLC, et al. | : | |
| 75 Kovar Street | : | |
| Bogota, NJ 07603 | : | |
| | : | |
| Defendants. | : | |

**CERTIFICATE OF SERVICE**

I, Matthew B. Weisberg, Esquire, hereby certify that on this 30th day of

November, 2010, a true and correct copy of the foregoing First Amended Complaint was

served via ECF, upon the following parties:

Andrew J. Borsen, Esq.
Gambourg & Borsen, LLC
2185 Lemoine Avenue
Fort Lee, NJ 07024

Edward W. Kirn, III
Powers Kirn, LLC
9 East Stow Road
Marlton, NJ 08053

WEISBERG LAW, P.C.

/s/ Matthew B. Weisberg, Esquire
MATTHEW B. WEISBERG, ESQUIRE
Attorney for Plaintiffs